Maria Regina FRANCES, Appellant,

v.

Bobby Gene FRANCES, Appellee.

No. 2007–SC–000076–DGE.

Supreme Court of Kentucky.

Oct. 23, 2008.

Julia Thigpen Crenshaw, White, White & Crenshaw, Hopkinsville, KY, Counsel for Appellant.

Sands Morris Chewning, Chewning & Chewning, Hopkinsville, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

This case arises from an initial custody determination by the Trigg Circuit Court awarding primary physical custody of the parties' daughter to the Appellee, Bobby Gene Frances. The Appellant, Maria Regina Frances, claims that the trial court's findings of fact were clearly erroneous and that the court improperly considered her relocations as a factor in its decision. After reviewing the record and the applicable statute, KRS 403.270, this Court finds no

clear error or abuse of discretion by the trial court and affirms the Court of Appeals, which affirmed the trial court's decision granting joint custody, with the Appellee being designated as the primary residential parent.

## I. Background

The parties were married on January 30, 1991, and had a daughter, Haley, on December 2, 1997. In March 2004, the parties separated but continued to live together in Cadiz, Kentucky. The Appellant filed for divorce on May 9, 2004, and in June 2004, the Appellee moved to neighboring Hopkinsville, Kentucky. A decree dissolving the parties' marriage was entered June 8, 2005. The decree, however, did not address custody, visitation, child support, and other matters, and the Trigg Circuit Court retained jurisdiction over those issues.

By agreed order entered September 2, 2004, the Appellee was ordered to pay $212.68 in child support each month. After their separation, the parties operated under an informal shared custody agreement, under which the Appellant functioned as the primary residential parent and the Appellee enjoyed nearly equal time sharing with Haley. This was not formalized in a temporary custody order or agreed order.

Both parties adhered to the informal custody agreement until April 2005, when the Appellant removed Haley from school and relocated to Iowa without notifying the Appellee or the Trigg Circuit Court. The Appellee filed an emergency motion for temporary custody on April 11, 2005, at which time the parties were awarded temporary joint custody. The order provided for nearly equal time sharing and reasonable telephonic communication between the parties and Haley. A hearing was conducted on April 28, 2005, and proof was taken on the issue of custody. On June 21, 2005, a second hearing was conducted, and on June 28, 2005, the Trigg County Circuit Court awarded joint custody with primary physical custody to the Appellee. In support of its ruling, the trial court concluded that the Appellant's unilateral decision to remove Haley from school and relocate to Iowa without notifying the Appellee disregarded the child's best interests. Haley's close relationship with the Appellee, regular and frequent interaction with the Appellee's extended family, and successful adjustment within the community of Trigg County, Kentucky provided the basis for the trial court's decision. The trial court denied a subsequent motion to amend, alter, or vacate.

The Court of Appeals affirmed the Trigg Circuit Court, holding that the trial court was in the best position to make a custody determination and the decision was neither clearly erroneous nor an abuse of discretion.

This Court subsequently granted discretionary review to address custody and relocation issues. This case was heard on the same day as *Pennington v. Marcum*, 266 S.W.3d 759 (Ky.2008), released herewith and which also addresses relocation and child custody. Much of what is discussed therein applies here as well, though this case involves relocation issues prior to issuance of the custody decree, and *Pennington*'s relocation issues arose subsequent to the custody decree.

Specifically, however, Appellant relies on *Fenwick v. Fenwick*, 114 S.W.3d 767 (Ky. 2003), which is overruled in part in *Pennington* and must also be addressed in this case because both this case and *Fenwick* involve relocation issues that arise prior to entry of the custody decree.

## II. Analysis

The Appellant argues that the trial court erred in naming the Appellee the primary

residential custodian and erred in its findings regarding her abrupt relocation to Iowa. She argues specifically that it was unreasonable and unfair in light of the evidence for the trial court to name the Appellee primary residential custodian when she functioned as Haley's primary caregiver throughout her life. Additionally, she argues that it was erroneous for the trial court to conclude the relocation to Iowa was not motivated by a desire to improve living conditions. Though the Appellant attempts to characterize the trial court's determinations as two distinct errors, the bottom line is that the finding regarding her relocation to Iowa was simply part of the consideration in determining that it was in Haley's best interest for the Appellee to be her primary residential custodian.

■ Civil Rule 52.01 states in pertinent part, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Furthermore, findings of fact are clearly erroneous only if they are manifestly against the weight of the evidence. *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky.1967). These directives are clearly applicable to child custody cases. *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky.1986). When an appellate court reviews the decision in a child custody case, the test is whether the findings of the trial judge were clearly erroneous or that he abused his discretion. *Eviston v. Eviston*, 507 S.W.2d 153 (Ky.1974).

The Appellant primarily notes various items of evidence in the record that support her version of the facts and that cut against the trial court's findings. She also relies on a 2004 unpublished opinion from the Court of Appeals, *Jones v. Jones*, No.2001–CA–002037–MR, 2004 WL 360901 (Ky.App. Feb.27, 2004), which she cites pursuant to CR 76.28. The Appellant improperly characterizes the trial court's finding that the relocation "was not career motivated but was based on a whim arising out of a romantic relationship" as the deciding factor in the trial court's custodial determination. She cites *Jones* to support her claim that the trial court's conclusion that she moved for a "romantic relationship" was an improper basis for denying her designation as primary residential custodian.[1]

■ As the trial court in this case properly noted, its custody ruling was not entered in response to a motion to modify a permanent order of custody; rather, it was actually the custody determination. As such, the court properly considered the standard required by KRS 403.270, the custody determination statute, which states that custody shall be determined in accordance with the best interests of the child giving each parent equal consideration. The statutory guidelines of KRS 403.270 do not include a definition of the best interests of the child standard; however, KRS 403.270(2) requires the trial court to consider all relevant factors and provides a list of non-exclusive, demonstrative factors to be considered in custodial determinations.

Citing *Fenwick* as authority, Appellant argues that as the primary caregiver in Haley's life up until the final custody decree, she was entitled to relocate with her child and that Appellee was required to show that the move seriously endangered the child, and that the harm from change of custody to him would be outweighed by

---

1. Without discussing the propriety of CR 76.28 as applied in this case, the Court has addressed *Jones* only to the extent Appellant relies on it for the reasoning of her argument as that case is not binding on this Court.

the good. However, this Court in *Fenwick* did not consider that relocation had been raised prior to entry of the final custody decree, and thus applied KRS 403.340, the modification of custody statute. In so doing, this Court erred because it did not distinguish between a temporary custody order and a custody decree. The Court now recognizes that the effect of relocation by a parent with the child on custody and visitation must be viewed in light of whether relocation occurs pre- or post-decree.

KRS 403.340, the modification of custody statute, speaks to modification of a custody decree, but the child custody statutes include no express definition of a "custody decree." While the generally preferred dictionary definitions of "decree" contemplate it as an ultimate decision or a "final judgment," the term having originated as the name of the "judgment" from a court of equity, it is often applied even to interim orders, especially in domestic cases. *See Black's Law Dictionary* 440–41 (8th ed.2004). Though Kentucky's child custody statutes include no express definition, it is clear that they distinguish between interlocutory child custody orders and decrees, with the latter meaning a final decision that ends the custody proceeding, is immediately appealable, and is subject to modification at a later date. The decree is the "judgment" (as defined in CR 54.01) in a custody case. The distinction is inherent in KRS 403.280, which provides that a court may enter temporary custody orders during a proceeding. This anticipates that custody matters will have to be dealt with in an interim manner before the final decree is entered. KRS 403.350 discusses both temporary custody orders and custody decrees, which further indicates that they are two separate things.

Thus, this Court must conclude that there are both temporary custody orders and custody decrees. Any order entered pursuant to KRS 403.208 is a temporary custody order; such decisions are "pendente lite," "interlocutory," or "non-final." The trial judge's "final" decision about custody is the custody decree. Finality in this context is different than in most others, however, as the decision, while immediately appealable, is subject to modification at a later time under KRS 403.340. For present purposes, the final decision—the decree—is the one that is "final or appealable," meaning that it is "a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02." CR 54.01. For example, as applied to *Fenwick*, the pendente lite order discussed in that opinion was a "temporary custody order" and the final decision (entered on December 8, 1997) was a custody decree. To the extent that *Fenwick* is inconsistent with this understanding, it is overruled.

In making the final custody decree, the trial court must apply KRS 403.270, which has a best interests standard. Consequently, most of the discussion in *Fenwick* about the standard to be applied to modification of custody must be disregarded in this case, as must any rule that appears to give a preference on relocation to a primary residential parent. Here, the trial court correctly applied the best interests standard, and while Appellant obviously disagrees with its findings, this Court cannot depart from them unless the factual findings are clearly erroneous or the trial court abused its discretion in applying the law.

■ The Appellant's brief focuses on providing explanations and justifications for her move to Iowa. She asserts, among other things, that her reasons for relocating were to escape the Appellee's threatening, erratic behavior and to improve her financial situation by sharing household expenses with her live-in boyfriend. She

claims these points demonstrate why the trial court made incorrect findings of fact and abused its discretion. However, the trial court conducted "extensive hearings on child custody, visitation and support," considered these allegations and, based on the evidence, came to the conclusion that the Appellant "disregarded the child's best interest by abruptly pulling her out of school later in the term and removing her to Iowa without notification to the child's father." Though the trial court stated the relocation of the Appellant was a substantial factor in the custodial determination (not the "deciding factor" as alleged by the Appellant), the record also indicates that the trial court placed significant weight on Haley's strong relationship with her father, frequent interaction with the father's extended family, and adjustment within the community. The Appellant's unilateral decision to disregard these substantial components of Haley's life supports the conclusion that it is in Haley's best interests that the Appellee function as primary residential custodian.

The Appellant also faults the trial court for making a final custody determination without waiting for the results from a court-ordered home study in Iowa entered May 4, 2005. Before the home evaluation report was concluded, the Appellee moved to reopen the proof, claiming that the Appellant had lied under oath concerning her live-in boyfriend's criminal convictions. At a hearing on June 21, 2005, evidence was presented that Appellant's live-in boyfriend, Michael Plank, had a prior DUI conviction. While under house incarceration, Plank had "passed out" in his hotel room while his own children played unattended in a motel pool on his visitation day. As a result, for an extended period thereafter, he was restricted to supervised visitation with his own children. The Appellant had testified that Plank had completed court-ordered alcohol counseling and did not drink around the home. While this was not directly contradictory to the new evidence, it did indicate less than fully candid testimony, and it was proper for the trial court to give that testimony weight.

The trial court was in a position to weigh the new evidence presented at this hearing with that it had heard in the previous hearings, and to make a well-reasoned custody determination without the benefit of a home study. The record clearly demonstrates careful attention and consideration to the best interests of the child.

Strikingly, the Appellant argues that the trial court placed too much emphasis on a single factor—her relocation to Iowa—yet simultaneously requests this Court to reverse the decision of the trial court almost solely based on her status as primary caregiver before the parties separated. While the trial court acknowledged it can be detrimental to remove a young daughter from her mother, it held that the other factors nevertheless supported the change in primary residence.

Although Appellant did relocate with the child, this case is not about the typical relocation questions of whether the relocation warrants a change of custody or of timesharing. Since this was the actual custody determination, the trial court had a clear directive to make its decision based on the best interests standard set forth in KRS 403.270.

After reviewing the record, it is clear the trial court's decision was supported by substantial evidence. While some of the evidence conflicted with the trial court's conclusions, and a different trial court or a reviewing appellate court might disagree with the trial court, the standard on appellate review requires a great deal of deference both to its findings of fact and discretionary decisions. To echo the Court of Appeals, the trial court was in the best

position to resolve the conflicting evidence and make the determination that it was in Haley's best interest for the Appellee to have primary physical custody. The trial court's decision adheres to the mandate of KRS 403.270, including giving due consideration to all relevant factors. The Court of Appeals was correct in noting that the trial court's decision was neither clearly erroneous nor an abuse of discretion.

Therefore, the Court of Appeals is affirmed.

MINTON, C.J.; ABRAMSON, SCHRODER, SCOTT and VENTERS, JJ., concur. CUNNINGHAM, J., not sitting.